**TORIN CORPORATION, Plaintiff,**

v.

**PHILIPS INDUSTRIES, INC., Defendant.**

No. C–3–80–021.

United States District Court, S. D. Ohio, W. D.

Jan. 20, 1981.

William S. Rambo, Columbus, Ohio, Theodore R. Paulding, Hartford, Conn., for Torin Corp.

Nathaniel R. French, William E. Lahey, Dayton, Ohio, for Philips Industries, Inc.

DECISION AND ENTRY CONDITIONALLY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; PLAINTIFF ORDERED TO FILE CERTAIN MATERIALS IN THE FORM PRESCRIBED BY F.R.C.P. 56, AT WHICH TIME DEFENDANT'S MOTION WILL BE OVERRULED IN ITS ENTIRETY.

RICE, District Judge.

The captioned cause came to be heard upon Defendant's motion seeking an Order of the Court entering summary judgment in its favor, and against Plaintiff, on the question of whether the patent in suit is invalid.

In its memorandum accompanying the motion, Defendant initially asserted that the Klonoski patent, No. 3,147,811, application for which was filed December 24, 1962, is invalid on one or more of three independent statutory grounds, to wit:

(1) the subject invention was *described in a printed publication* in this country more than one year prior to the application date, and, therefore was not patentable under 35 USC § 102(b);

(2) the subject invention was *on sale* in this country more than one year prior to the application date, and, therefore, was also not patentable under 35 USC § 102(b); and/or

(3) Plaintiff had assisted in the application for a British design registration in respect to the invention prior to a period of time six months after the domestic application date *without obtaining a license for foreign filing* from the Commissioner of Patents, in violation of 35 USC § 184, thereby rendering the patent invalid under 35 USC § 185.

The first asserted ground in support of a determination that the patent in suit is invalid is based on Defendant's submissions indicating that the subject invention had been: (1) disclosed to independent sales representatives in May, 1961, by way of sample viewing and distribution of photographs of the item; (2) disclosed to independent sales representatives on or about November 28, 1961, by way of distribution of Field Sales Memo # 319 (dealing with the item); and (3) otherwise may have been disclosed to other persons prior to December 24, 1961, by way of photographs known to be available for distribution after November 28, 1961.

In response, Plaintiff does not deny the occurrence of the indicated disclosures (except, with respect to (3), Plaintiff contends that the fact that information may have been available for distribution does not, in any event, mean that the information was actually distributed). However, Plaintiff does say that none of the indicated disclosures amounts to the kind of "printed publication" required for invalidity under 35 U.S.C. § 102(b). Specifically, Plaintiff says that Defendant has failed to demonstrate that persons versed in the art would be able to practice the subject invention from the indicated disclosures, *see Ballantyne Instruments & Electronics, Inc. v. Wagner*, 345 F.2d 671, 673–74 (6th Cir. 1965), or that any such disclosure was accessible to the public, *see Garrett Corporation v. United States*, 422 F.2d 874, 877–78 (Ct. Claims), *cert. denied*, 400 U.S. 951, 91 S.Ct. 242, 27 L.Ed.2d 257 (1970).

Defendant's reply to these contentions expresses a willingness "not to press" the first asserted ground in support of the pat-

ent's invalidity. However, because Defendant has *not expressly withdrawn* the question from consideration pursuant to its motion, the Court considers that the matter has not been abandoned, as such, and that a ruling thereon is appropriate.

Based solely upon Defendant's submissions, the Court finds that it has not been demonstrated that there is no genuine issue as to a material fact on the subject of whether, prior to December 24, 1961, the subject invention was described in a "printed publication," as that phrase is used in 35 U.S.C. § 102(b), and, therefore, the patent has not been shown to be invalid on this independent ground. Although it is clear the subject invention was described to some extent in certain of the indicated disclosures, it has not been shown that those descriptions were of sufficient detail to admit of practice from them by persons versed in the art. Further, although it is clear that the disclosures were made to *independent* sales representatives, it does not appear certain from that fact alone that the description was "accessible to the public." *Cf. Jack Winter, Inc. v. Koration Company, Inc.*, 375 F.Supp. 1, 37 (N.D.Calif. 1974) (sale to "intermediary" in patentee's distribution system not *public* sale); *but cf. A. Schrader's Sons, Inc. v. Wein Sales Corporation*, 9 F.2d 306, 308 (2d Cir. 1925) (indiscriminate, nonsecretive use in front of patentee's employees may be *public* use).

Defendant's second asserted ground in support of its contention that the patent in suit is invalid is based on certain language in Plaintiff's Field Sales Memo # 319 (particularly, the instruction that sales representatives "plug this new design as a Torrington first"), and on evidence of a 100 lot sale of the device to Carrier Corporation "in early 1962." Although Defendant admits that these matters do not demonstrate a sale or public use of the invention before the critical date of December 24, 1961, Defendant does contend that placement of the invention "on sale" as of December 24, 1961, is conclusively shown through the distribution of Memo # 319 proximately resulting in the Carrier sale.

Plaintiff says in response, with some support from the deposition testimony of Leonard Lindstrom (Plaintiff's Regional Sales Manager), that Memo # 319 merely prepared sales representatives with respect to the manner in which the subject device would be marketed once a sales campaign had commenced, but it did not instruct the representatives to begin marketing the device as of the date of that document's distribution. Since there is no evidence that the device was in fact sold or offered for sale to Carrier, or any other customer, prior to December 24, 1961, Plaintiff says that Defendant has failed to conclusively demonstrate satisfaction of the prerequisites for the "on sale" statutory bar in 35 U.S.C. § 102(b).

The Court agrees with the Defendant that the language of Memo # 319 bears a viable, indeed, very strong inference that the invention had been placed "on sale" as of December 24, 1961 (i. e., that Plaintiff had undertaken to prepare the market, rather than just marketing people, at that time). However, in considering a motion for summary judgment, the Court does not resolve factual issues upon the weight of a party's submissions, but merely determines whether any genuine issues have been preserved for trial by opposing submissions. In the present case, the Court must conclude that the viability of the "on sale" inference from the language in Memo # 319 has been directly opposed or challenged by Lindstrom's deposition testimony and that, therefore, the issue of the invention's placement "on sale" prior to December 24, 1961, has been preserved for trial.

The fact that Carrier purchased the device in quantity "in early 1962" does not alter this conclusion, since that date of sale does not necessarily indicate that an offer for sale or other marketing effort with respect to the device had been made in 1961 or, more importantly, at any time prior to December 24, 1961. Further, as strong as is the "on sale" inference from Memo # 319, the Court cannot conclude that the combination of that inference with the proximate "early 1962" sale to Carrier constitutes evi-

dence of the fact of improper placement "on sale", upon which, in considering Lindstrom's testimony, reasonable minds could not reach different conclusions. There is, in short, a genuine issue of a material fact on this issue. Thus, the Court finds that it has not been shown that there is no genuine issue of a material fact that the subject invention was "on sale" within the meaning of 35 U.S.C. § 102(b), and, therefore, the patent has not been shown to be invalid on this independent ground.

Since the Court cannot conclude, at this time, that the invention was "on sale" before December 24, 1961, it need not address Plaintiff's alternative contention that if the device had in fact been placed "on sale" or used before the critical date, then such activity was solely for "experimental" purposes (a recognized exception to the "public use" bar in 35 U.S.C. § 102(b)).

The final ground asserted in support of a determination of the patent's invalidity is based upon evidence that Plaintiff's Director of Engineering (Kenneth A. Merz, now deceased) had assisted Plaintiff's British licensee (S. Smith & Sons Ltd.) in filing a British design registration in respect to the subject invention in February, 1962, but that no license for foreign filing had been granted by the Commissioner of Patents, pursuant to 35 U.S.C. § 184 (thereby resulting in the domestic patent's invalidity under 35 U.S.C. § 185).

In response, Plaintiff initially contended that such improper assistance in foreign filing was known only to Merz, and that Plaintiff, or at least Plaintiff's counsel, did not become aware of same until October 27, 1980 (Defendant's summary judgment motion having been filed on October 24, 1980). Implicitly, Plaintiff contended that the foreign filing was "inadvertent" and, therefore, Plaintiff would be entitled to a retroactive license from the Commissioner pursuant to 35 U.S.C. § 184 (thus curing the independent invalidity defect under 35 U.S.C. § 185). Plaintiff further indicated that a petition for retroactive licensing had been recently filed with the Commissioner and, therefore, requested that the Court

stay the proceedings, herein, pending the Commissioner's decision on said petition. (if Defendant's motion for summary judgment should not otherwise be overruled on this independent ground).

Defendant's reply to Plaintiff's request for stay emphasized the absence of a factual dispute with respect to the then-apparent invalidity of the patent under 35 U.S.C. § 185. Since the Court "must treat the situation as it now stands," *Thermovac Industries Corp. v. Virtis Co.*, 285 F.Supp. 113, 114 (S.D.N.Y.1968), Defendant said that the patent in suit must be considered invalid "by the clear command of Section 185," *id.*, (i. e., by virtue of the unlicensed foreign filing, irrespective of the possibility that a license might be granted in the future, and irrespective of this Court's determinations about the independent "printed publication" and "on sale" statutory bars) and a stay of the proceedings pending a decision by the Commissioner would not be warranted, *id.*

During the pendency of Defendant's motion for summary judgment, this Court received information from both parties (although not in the form required by F.R.C.P. 56) to the effect that the Commissioner had, upon consideration of Plaintiff's recent petition, determined that Plaintiff's assistance with the British filing in 1962 was "inadvertent," and that a retroactive license for foreign filing should, therefore, issue. Even more recently, the Commissioner denied Defendant's petition for reconsideration of his disposition of Plaintiff's petition.

Based upon this additional information *being submitted in the form required by Rule 56*, the Court *would* conclude that *Thermovac, supra*, is inapposite because *no license*, prospective or retroactive, had been granted therein. Rather, the Court *would find* that the governing principles are set forth in *Minnesota Mining and Manufacturing Company v. Norton Company*, 366 F.2d 238 (6th Cir. 1966), *cert. denied*, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967), which is strikingly similar to the case, herein.

In *Minnesota Mining*, the patentee's counsel became aware of improper foreign

filings during the course of infringement litigation, and applied to the Commissioner for retroactive licensing at approximately the same time that its adversary moved for summary judgment on the patent's invalidity under 35 U.S.C. § 185. Before the Commissioner rendered a decision on the patentee's retroactive licensing application, the District Court granted summary judgment, holding the patent in question to be invalid. That action was affirmed by the District Court upon reconsideration of the motion after the Commissioner had subsequently granted the retroactive license. The District Court took the view that the Commissioner's licensing could have no effect upon the clear invalidity of the patent during the pendency of the litigation, or, indeed, at any time after the invalid patent had issued. The Sixth Circuit reversed, holding, *inter alia,* that the grant of a retroactive license *at any time* cures the patent's invalidating defect *as of the date of the foreign filing to which the license is directed. Id.* at 242.

In the present case, the Commissioner's granting of a retroactive license with respect to the British filings, during the pendency of this litigation, would cure any invalidating defect in Plaintiff's patent under 35 U.S.C. § 185, i. e., at least to the extent that such defect has been raised by this independent ground in Defendant's motion. However, as previously indicated, the information suggesting that the Commissioner has granted Plaintiff's petition for a retroactive license has not been provided to this Court in the form required by F.R.C.P. 56. Therefore, in order to make a proper record for the Court's disposition of Defendant's motion with respect to this matter, Plaintiff is instructed to submit materials evidencing such action by the Commissioner, according to the requirements of F.R.C.P. 56. Such a submission must be made to this Court in advance of the trial date.

Finally, in a letter to this Court accompanying certain of the additional information set forth above, Defendant suggests that the Court should consider whether the Commissioner erred in determining that Plaintiff's foreign filing was "inadvertent," and

that the Court should undertake such inquiry "as part of" Defendant's summary judgment motion. Further, Defendant stated that if the motion is denied, it would "propose to press the issue at trial."

Without benefit of briefing by both parties on this matter, the Court declines to pursue Defendant's suggestion that this matter be considered as part of its motion for summary judgment. However, purely as a gratuitous comment, the Court notes that the determination of "inadvertence" in a foreign filing is a matter legislatively delegated to the Commissioner, apparently within the exercise of his sound discretion, and, as such, is a matter particularly inappropriate for contrary determination on motion for summary judgment. *See McCulloch Motors Corporation v. Oregon Chain Saw Corporation,* 245 F.Supp. 851, 852 (S.D. Calif.1963); *Cf. Minnesota Mining, supra* at 241.

Further, the Court also declines to decide, at this time, whether it would be proper for Defendant to litigate the correctness of the Commissioner's "inadvertence" determination at the forthcoming trial. In this regard, the Court notes that the possibility of error in the Commissioner's determination of "inadvertence" does not appear relevant to the question of the validity of the patent in suit, at least to the extent that the patent's invalidity would be independently predicated upon 35 U.S.C. § 185 (provided, of course, that the patent is not *otherwise* invalid by virtue of either the "on sale" or "printed publication" bar in 35 U.S.C. § 102(b)). In the context of Section 185, the patent would be valid *if the Commissioner had granted a retroactive license.* Whether or not he erred in finding "inadvertence," and whether or not he, thereby erred in granting the license, does not place in issue the apparent fact, and only material fact under 35 U.S.C. § 185, that the license was granted. If the Defendant seeks to challenge the *validity of the license,* or the grounds upon which it was granted, it appears that same might most appropriately be done by an independent action *against the Commissioner,* either in

mandamus, 28 U.S.C. § 1361, or by review under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* Of course, the scope of the Commissioner's discretion in granting a retroactive license may impair Defendant's pursuit of either course of action.

In declining, at this time, to decide upon the propriety of litigating this issue (i. e., the question of error in the Commissioner's "inadvertence" determination) at the forthcoming trial, the Court remains aware of Defendant's intent to pursue such course of action. Therefore, the parties are instructed to submit simultaneous briefs by the first day of trial on the relevancy of this matter to the issues set for trial (e. g., the validity of the patent in suit) including but not limited to the question of whether this Court may, in any event, enter into a review of the Commissioner's "inadvertence" determination as a part of the instant action.

In disposing of Defendant's motion for the reasons previously stated, the Court finds that it has no cause to issue an Order, pursuant to F.R.C.P. 56(d), "specifying the facts that appear without substantial controversy." Upon the materials submitted in support of and in opposition to Defendant's motion, it is clear that the Court cannot practicably ascertain which material factual predicates to the independent "printed publication" and "on sale" statutory bars, if any, are not genuinely in dispute between the parties. With respect to the equally independent "foreign filing" matter, the Court does recognize, as a practical consideration, that the question whether the Commissioner has granted a license no longer *appears to be* genuinely disputed by the parties. However, after Plaintiff has submitted a document evidencing the Commissioner's action, then the materials on the record in support of, and in opposition to Defendant's motion will consist of: (1) the French affidavit and associated materials *indicating that no license has been granted*; and (2) Plaintiff's submission *indicating that a license has been granted.* These submissions would merely place in issue the question whether a license has been granted. They would not warrant this Court's

determination, as an uncontroverted fact at trial, that a license had been granted, which would, in effect, grant an unsolicited summary judgment *for Plaintiff* on the foreign filing matter in response to *Defendant's* summary judgment motion.

Thus, Defendant may litigate this fact or, indeed, any fact relevant to the issue of the patent's validity, (keeping in mind that the Court presently expresses no opinion on the relevancy of possible error in the Commissioner's "inadvertence" determination to the question of the patent's invalidity under 35 U.S.C. § 185). To the extent that Defendant may find it impracticable to challenge the apparent fact that a license has been granted, and that the patent is, therefore, apparently not invalid by virtue of 35 U.S.C. § 185, it is, of course, recognized that the patent may be independently determined to be invalid at trial by virtue of either or both of the statutory bars in 35 U.S.C. § 102(b). In other words, in overruling Defendant's motion for the forestated reasons, this Court does not foreclose litigation of any issue relevant to the subject matter of that motion.

The same caveat applies to the Court's comment regarding the issue of error in the Commissioner's determination of "inadvertence" in the foreign filing. Although it appears (as this Court specifically declines to decide without briefing by the parties) that the Defendant may not challenge the *validity of the retroactive license* in this action, and, therefore, that the correctness of the Commissioner's "inadvertence" determination would not be a litigable issue *for such purpose*, it does appear that the question of "inadvertence" in the foreign filing might be relevant to Defendant's claim of "fraud on the patent office" (insofar as Plaintiff may not have disclosed *known* foreign filings in obtaining the patent). Thus, nothing in this Court's decision, or its comment on the relevancy of possible error by the Commissioner, forecloses the admissibility of any evidence, whether within or without the subject matter of Defendant's motion.

In summary, Defendant's motion seeking an Order of the Court entering summary judgment in its favor, and against Plaintiff, on the issue of the invalidity of the patent in suit, is deemed to be not well taken as to the first two grounds asserted thereunder (i. e., that the patented invention was either described in a "printed publication" or "on sale" more than one year prior to the application date for said patent). As to the third ground asserted under Defendant's motion, the Court finds that the parties do not dispute that, during the pendency of these proceedings, the Commissioner has granted a retroactive license with respect to Plaintiff's foreign filing in 1962, and that the patent is, therefore, not conclusively invalid under 35 U.S.C. § 185. However, in order to make a proper record, Plaintiff is instructed to submit evidence of such action by the Commissioner according to the form required by F.R.C.P. 56. Upon receipt of such submission, the Court would deem Defendant's motion for summary judgment to be not well taken as to the third ground asserted thereunder, and, accordingly, overrule Defendant's motion in its entirety.

Further, in accordance with the preceding discussion, the parties are instructed to submit simultaneous briefs, by the first day of trial, on the relevancy of possible error in the Commissioner's "inadvertence" determination to the issues set for trial, including, but not limited to the question of whether this Court may enter into a review of the "inadvertence" determination as a part of the instant action.